IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

NORMAN TODD,                    )
                               )
        Plaintiff,              )
                               )
vs.                            )     CASE NO. 2:07-CV-149-MEF
                               )
CITY OF CLANTON, *et. al.*,     )
                               )
        Defendants.            )

## RESPONSE OF PLAINTIFF TODD TO MOTION TO DISMISS

COMES NOW the Plaintiff Norman Todd (hereinafter referred to as the Plaintiff, by and though counsel, and submits this Response of Plaintiff Todd to Motion to Dismiss in the above-entitled case.  The Plaintiff would show unto this Honorable Court the following:

## FACTS

1.   The Plaintiff alleged that he had leased a mobile home at a mobile home park known as the Ashley Court Trailer Park whereby he had executed a lease agreement solely in his name (paragraph 6, page 2 of the Complaint).

2.   The Plaintiff further alleged that the Defendant Littlejohn admitted to Plaintiff that she and the Defendant Charles utilized the Defendant Charles' position as a police officer to obtain access to the Plaintiff's mobile home

1

through a Mrs. Allison whom was the landlord's representative managing the mobile home park. According to paragraph 7 of the Plaintiff's Complaint, appearing at pages 2 and 3, Mrs. Allison acted upon the Defendant Charles' use of his position at his insistence in his official capacity as a police officer in complying with Defendant Charles' instructions to allow Defendants Littlejohn and Charles access to the mobile home. After obtaining access, the Plaintiff's mobile home was ransacked **without probable cause to believe that the Plaintiff had committed any crime**. Notwithstanding, there was no probable cause whatsoever to search the Plaintiff's mobile home, nor to enter therein, by the Defendant Charles.

3.    After his conversation with the Defendant Littlejohn, the Plaintiff verified that the mobile home had been entered and ransacked; that jewelry had been taken out of chest-of-drawers; items were strown about the mobile home; as well that a shoebox which he kept on his kitchen counter was moved to his bedroom, with some of the contents thrown on the bed; and that two rings which he valued at approximately $1,200.00 were missing and to this day have not been located. Additionally, Plaintiff stated that one set of the keys which he kept in the shoebox was kept by the intruders; that the Defendants whom

2

entered the mobile home took the middle door off of its hinges and left the backdoor unlocked.

4.   Defendants Charles engaged in an unlawful entry and search of Plaintiff's mobile home without probable cause.  The Defendant Charles further participated and conspired with the Defendant Littlejohn in causing the unlawful arrest, detention and prosecution of Plaintiff by initiating a criminal complaint against Plaintiff which alleged that Plaintiff engaged in the unauthorized use of a vehicle, a criminal charge for which Plaintiff was arrested, detained, booked, fingerprinted and released on bond, and then prosecuted in the criminal action.  Plaintiff alleged in paragraph 9 on pages 3 and 4, that the Defendant Charles participated in said arrest and was one of the initiating causes of the Plaintiff's arrest.

5.   The Plaintiff alleged that the prosecution which followed his illegal arrest and detention was nolle prossed and dismissed as a result of the lack of probable cause that a crime had occurred determined by the Court when the Plaintiff attended his trial on the false criminal charge.

6.   Concerning the City and its liability and/or the police chief and mayor, the City of Clanton is a small town

unlike a major municipality and does not have a substantial police department and force. In Paragraph 11 at page 4 of his Complaint the Plaintiff alleged that the police chief knew of the Defendant Charles' conduct in illegally entering the Plaintiff's premises and illegally searching the residence immediately before the occurrence, or learned of the illegal search immediately thereafter. Plaintiff further stated in his Complaint that on information and belief of Plaintiff that the police chief either knew before the Plaintiff was arrested or learned shortly thereafter that the Plaintiff was to be arrested on frivolous and false charges and did nothing to stop the arrest warrant from being served and the prosecution commenced and continued against the Plaintiff.

7. Paragraph 12 of the Plaintiff's Complaint further alleged that the police chief and the mayor were the final decision makers jointly responsible for hiring, firing, training and supervising their police department employees. Plaintiff claimed that the Defendants negligently trained and/or negligently failed to properly/adequately train the Defendant Charles and/or failed to supervise said Defendant Charles which resulted in Defendant Charles' participation in the conduct for which the Plaintiff complains

(unconstitutional conduct underlying the U.S.C. 42 1983 action).

8.   Plaintiff further alleged that if the mayor and police chief did not learn of the Defendant Charles' and Defendant Littlejohn's actions before or at the time that they entered the mobile home and subsequently executed a warrant for the Plaintiff's arrest; that each knew that the warrant for the Plaintiff's arrest had been issued without probable cause and each failed to stop the illegal prosecution which then ensued, thereby fully ratifying and condoning the Defendant Littlejohn and the Defendant Charles in their actions in committing trespass, illegal search, entry and ransacking of Plaintiff's mobile home and that the mayor and police chief also ratified and condoned the illegal arrest of Plaintiff as well as ratified and condoned Plaintiff's subsequent arrest and prosecution (paragraph 13, pages 4 and 5 of Plaintiff's Complaint).

9.   In Count I, paragraph 15 of the Complaint, Plaintiff alleged that Defendant Charles used his position as a police officer to obtain illegal access, to commit a trespass and illegal search of Plaintiff's mobile home, as well as committing a trespass against the personalty of Plaintiff.

Paragraph 16 of Count I of the Complaint, Plaintiff alleged that the city by and through its mayor and police chief knew of the invasion of the Plaintiff's privacy interest by trespass and illegal search and that they failed and/or refused to stop the Defendants' actions. Furthermore, Plaintiff alleged that the Defendant's actions were made under color of state law and in their official capacities at the time of their actions.

Paragraph 17 of Count I of the Complaint, Plaintiff alleged that the mayor and police chief learned of the intent of the Defendant Charles to initiate the arrest warrant being made without probable cause and to arrest the Plaintiff and failed and/or refused to do anything to stop the prosecution or to remedy the illegal arrest. Paragraph 18 stated that Defendants, jointly and severally, acted with deliberate disregard and deliberate indifference to the Plaintiff's federal constitutional rights to be free from invasion of his privacy interest and to be secure in his home and his person to be free from unlawful searches of his home and seizure of his person. The Plaintiff further alleged that the city by and through its mayor, police chief and Officer Charles under color of their office and under law, along with Defendant

6

Littlejohn, together violated Plaintiff's constitutional rights under the First and Fourth Amendments to the United States Constitution, as well as a violation of the Fifth Amendment to the United States Constitution as it applies to the states through the Fourteenth Amendment; and that said actions ultimately formed the basis of Plaintiff's 42 U.S.C. 1983 claims.

10.  In paragraph 18, Count II, of the Complaint, the Plaintiff alleged that Littlejohn, the mayor, police chief and Charles acting in their individual capacities acted with a deliberate indifference and complete disregard with Plaintiff's constitutional rights in violating Plaintiff's First, Fourth, Fifth and Fourteenth Amendment Rights actionable under 42 U.S.C. 1983 (paragraph 21, page 7).

11.  In Count III Plaintiff claimed the Defendants, jointly and severally, violated Plaintiff's invasion of privacy, illegal search, illegal detention and arrest without probable cause rights (paragraph 24, page 7). Paragraph 25 of Count III alleged that if the mayor and police chief did not have actual knowledge of illegal acts at the time of their commission that they subsequently learned of the unconstitutional action and, thereafter, failed and/or refused

to do anything about the matters to which the Plaintiff was subjected - illegal search, wrongful arrest, wrongful prosecution - thereby ratifying and condoning the illegal search, illegal trespass, detention and arrest of the Plaintiff (Count IV, paragraph 25, page 7).

12.  In Count IV, at page 8 of the Complaint Plaintiff alleged that the city by and through its mayor and police chief negligently hired, trained and supervised the Defendant Charles and failed to establish proper training methods and procedures that clearly established that its officers would not engage in the type conduct in which the Defendant Charles engaged by violating Plaintiff's Fourth, Fifth and Fourteenth Amendment constitutional rights, thereby violating 42 U.S.C. 1983.

13.  Count V alleged that the Defendant City, by and through its mayor and police chief and Officer Charles, acting under color of state law and with the deliberate indifference or wanton disregard of Plaintiff's rights, initiated or allowed the illegal prosecution to continue and/or ratified and condoned the prosecution of Plaintiff on an alleged criminal law without probable cause, thereby giving rise to a malicious prosecution claim in violation of Plaintiff's First,

Fourth, Fifth and Fourteenth Amendment rights(paragraph 31, pages 8 and 9).

14. Count VI of the Complaint was a state law malicious prosecution claim against the city, by and through its mayor, police chief and Officer Charles.

15. Count VII was an action in trespass (State law claim)against Defendants Littlejohn and Charles and included claims against the mayor and police chief for ratifying and condoning the illegal trespass.

## STANDARD OF REVIEW

"When ruling on a motion to dismiss for failure to state a claim, the court must assume that the factual allegations in the complaint are true. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Fed.R.Civ.P. 12(b)(6). Assuming that the facts are true, a complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) only "if it is clear that no relief could be granted" under any set of facts that could be proved consistent with the allegations *Hishon v. Kind & Spalding*, 467 U.S. 69,73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). On a motion to dismiss for failure to state a claim upon which relief may be granted, the movant "sustains a very high burden." *Jackam v. Hospital Corp. Of America Mideast, Ltd*, 800 F.2d 1577, 1579 (11th Cir.1986) (citing *Currie v. Cayman Resources Corp.*, 595 F.Supp. 1364, 1376 (N.D.Ga.1984)). The Court of Appeals for the Eleventh Circuit has held that "motions to dismiss for failure to state a claim should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims." *Jackam*, 800 F2d at 1579 (quoting *Bracewell v. Nicholson Air Servs. Inc., 680 F.2D 103, 104 (11th Cir.1982)."

9

Ross v. State of Alabama, 15 F.Supp.2d, 1173, 1180 (M.D..Ala. 1998)

**ARGUMENT**

I.    **42 U.S.C. § 1983 Claims.**

**TO OVERCOME A MOTION TO DISMISS, PLAINTIFF MUST STATE A CLAIM BASED UPON DEPRIVATION OF A CONSTITUTIONAL RIGHT**

"...Before addressing Defendants' qualified immunity defense, the court must first determine whether Plaintiffs have alleged a deprivation of a constitution right. *County of Sacramento v. Lewis*, – U.S. – , – n. 5. 118 S.Ct. 1708, 1714 n. 5. 140 L.Ed.2d 1043 (1998). Once making this determination, the court will address Defendants' qualified immunity defense. *Id*...."

"...Section 1983 itself creates no substantive rights; rather, it provides a remedy for deprivation of federal rights established elsewhere. *See Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir.1989). Thus, in considering a Motion to Dismiss, the court must determine whether the plaintiff has asserted a cognizable claim under § 1983. *See Jordan v. Doe*, 38 F.3d 1559, 1564 (11th Cir.1994).

To state a claim for relief, § 1983 litigants have the burden of alleging two elements with some factual detail: "(1) that they suffered a deprivation of 'rights, privileges or immunities secured by the Constitution and laws' of the United States," and (2) that a person "acting under color of law" caused the deprivation, either by an act or omission. *Wideman v. Shallowford Community Hosp., Inc*., 826 F.2d 1030, 1032 (11th Cir.1987) (citation omitted). ..."

In this case, Plaintiff has submitted two separate violations of his constitutional rights; namely, (a) an illegal search and invasion of his privacy interest in his

home performed under color of law without probable cause to believe he had committed a crime in violation of First, Fourth and Fourteenth Amendments to the United States Constitution, and (b) false detention, arrest and federal malicious prosecution for violation of Fourth Amendment constitutional right, as well to be free from false arrest and malicious prosecution made without probable cause.

## II.  PLAINTIFF'S FOURTH AMENDMENT RIGHT WAS VIOLATED

### A.  THE PLAINTIFF HAS A FEDERAL FOURTH AMENDMENT RIGHT TO BE FREE FROM ILLEGAL SEARCH AND SEIZURE.

> **"a.  Fourth Amendment Right to be Free from Unreasonable Search and Seizure ...**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. 4. The Fourth Amendment's protection"unquestionably extends beyond criminal investigations to civil and administrative contexts." *Lenz v. Winburn*, 51 F.3d 1540, 1548 n. 7 (11ᵗʰ Cir.1995) (citing *Soldal v. Cook County, Ill*. 506 U.S. 56, 66 n. 11, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992); *O'Connor v. Ortega*, 480 U.S. 709, 714, 107 S.Ct. 1492, 94 L.Ed2d 714 (1987); *Camera v. Municipal Court*, 387 U.S. 523, 534, 87 S.Ct. 1727, 18 L.Ed2d 930 (1967)).  It is well-settled that searches and seizures inside a home without a warrant are presumptively unreasonable and in violation of the Fourth Amendment, absent exigent circumstances, *See Payton v. New York*, 445 U.S. 573, 587, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Lenz*, 51 F.3d at 1548. Accordingly, assuming the facts as alleged in Plaintiffs' Complaint are true, the court finds that Plaintiffs have sufficiently stated a Fourth Amendment violation against Defendant

Bowman."
<u>Ross v. State of Alabama</u>, 15 F.Supp.2d 1173, 1182-83
(M.D.Ala. 1998).

It is undisputed that Plaintiff's home was illegally searched with no probable cause existing.

## B.   <u>THE SECOND INCIDENT INVOLVING PLAINTIFF'S FALSE ARREST ALSO INVOLVES A PROTECTED FOURTH AMENDMENT RIGHT</u>

"A.   Section 1983

An individual has a federally protected right to be free from unlawful arrest and detention resulting in a significant restraint of liberty and violation of this right may be grounds for suit under 42 U.S.C. § 1983. *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir.1990); *Dennis v. Warren*, 779 F.2d 245, 247 (5th Cir.1985). An arrest is unlawful if it is not supported by probable cause. *Lowe v. Aldridge*, 958 F.2d 1565, 1570 (11th Cir.1992). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir.1992). Probable cause determinations traditionally have been guided by reviewing the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)."
<u>Babers v. City of Tallasse, Ala</u>., 152 F.Supp.2d 1298 (M.D.Ala. 2001)

It is undisputed that Plaintiff was falsely arrested and prosecuted for a crime where no probable cause existed for the arrest.

See also <u>Davis v. Williams</u>, 451 F.3d 759, 764 (11th Cir.2006), which states as follows:

"**8.** Our inquiry focuses on the first step of the qualified immunity analysis–whether Davis' constitutional rights were violated. There is no question that the second step–clearly established–is satisfied, as it is clearly established that an arrest made without probable cause violates the Fourth Amendment, *Thornton v. City of Macon*, 132 F.3d 1385, 1399 (11th Cir.1998)(citing *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir.1990))."

Plaintiff submitted facts which clearly established he was falsely arrested, thereby violating Plaintiff's Fourth Amendment constitutional rights.

Furthermore, Plaintiff has submitted facts which were concealed from the magistrate where it was known that Plaintiff was purchasing the car that he was alleged not to have authority to use. This was material as to the fact of whether a crime had been committed.

"It is also clearly established that withholding exculpatory or impeachment evidence from a prosecutor, thus preventing its disclosure to the defense, violates an accused's due process rights. *Freeman v. State of Georgia*, 599 F.2d 65, 69 (5th Cir.1979, *cert. denied*,444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641 (1980); *McMillian v. Johnson*, 88 F.3d 1554, 1569 & n. 19 (11th Cir.1996)." Glidewell v. Town of Gantt, 176 F.Supp.2d 1263, 1269 (M.D.Ala. 2001).

The city officials knew Plaintiff had not committed a crime. They knew that Plaintiff's Fourth Amendment rights were clearly violated.

C.  **DEFENDANTS ACTED UNDER COLOR OF LAW FOR 42 U.S.C. 1983
    PURPOSES**.

> " "A person acts under color of state law when he
> acts with authority possessed by virtue of his
> employment with the state," *Almand v. DeKalb County*,
> 103 F.3d 1510, 1513 (11th Cir.1997), *cert. denied*,
> 522 U.S. 966, 118 S.Ct. 411, 139 L.Ed.2d 314 (1997),
> including misuse of power made possible only because
> the employee is clothed with the authority of state
> law. *Burrell v. Board of Trustess*, 970 F.2d 785, 790
> n. 12 (11th Cir.1992), *cert.denied*, 507 U.S. 1018,
> 113 S.Ct. 1814, 123 L.Ed.2d 445 (1993). ...
>
> "... Indeed, "off-duty police officers who flash a
> badge or otherwise purport to exercise official
> authority generally act under color of law."
> *Bonenberger v. Plymouth Township*, 132 F.3d 20, 24
> (3rd Cir.1997)."
> Ott v. City of Mobile, 169 F.Supp.2d 1301, 1307
> (S.D.Ala. 2001).

It is clear that the Defendant Charles, a police officer,
used his position as a police officer to gain entry to
Plaintiff's mobile home and in aiding Defendant Littlejohn's
entry to the mobile home. The Defendant Charles' entry into
the mobile home leased by Plaintiff transcended legitimate law
enforcement activity, thus, making Charles' action illegal. He
had no probable cause for entry into Plaintiff's home. He had
no probable cause to perform the search of Plaintiff's home.

Thereafter, the Defendant Charles aided the Defendant
Littlejohn in obtaining the warrant for Plaintiff's arrest,
falsely providing a statement under oath that Plaintiff had

committed a crime for which Plaintiff was detained, fingerprinted and prosecuted. The Defendant Charles knew the charges were false when made and misrepresented facts to the issuing magistrate in order to obtain the warrant for the arrest of Plaintiff.

## III. QUALIFIED IMMUNITY OFFERS PROTECTION IF CONDUCT DOES NOT VIOLATE CLEARLY ESTABLISHED STATUTORY OR CONSTITUTIONAL RIGHTS OF WHICH A REASONABLE PERSON WOULD HAVE KNOWN.

"A.   *Qualified Immunity Principles*

"Qualified immunity offers a complete protection for government officials sued in their individual capacities **if their conduct** 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir.2002)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). To be entitled to qualified immunity, the defendant must prove that he was acting within the scope of his discretionary authority. *Id*. "Once the defendants establish that they were acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." *Lumley v. City of Dade City*, 327 F.3d 1186, 1194 (11th Cir.2003).

In this case, it is clear that the Defendant Charles and the city clearly violated the Plaintiff's constitutional rights. Therefore, qualified immunity is not available to said Defendants. Additionally, the Defendants cannot show that the officer's actions were performed with any legitimate discretionary authority.

"... "To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Harbert Int'l v. James*, 157 F.3d 1271, 1282 (11th Cir.1998). To that end, "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an officials's discretionary duties." *Id*. (Quotation marks omitted)." "Gray *Ex Rel*. Alexander v. Bostic, 458 F.3d 1295, 1303 (11thCir. 2006)...."

Furthermore, Plaintiff has shown that the constitutional violations alleged represented violations of clearly established law then in existence. Both Fourth Amendment violations have been clearly recognized by this Court previously for a substantial time period prior to this incident. Therefore, the law was clearly established at the time of both incidents.

"*D. Clearly Established Law*

Whether a constitutional right was "clearly established" at the time of the violation turns on "'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Bashir*, 445 F.3d at 1330 (quoting *Saucier*, 533 U.S. at 202, 121 S.Ct. At 2156)...."

"...However, our inquiry does not end here. Even in the absence of factually similar case law, an official can have fair warning that his conduct is unconstitutional when the constitutional violation is obvious, sometimes referred to as "obvious clarity" cases. *See United States v. Lanier*, 520 U.S. 259, 271, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432

(1997) ""[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] been previously held unlawful." (Quotation marks omitted)); *Vinyard v. Wilson*, 311 F.3d 1340, 1350-51 (11th Cir.2002).

Plaintiff submits that the facts of this case show that this case is one of **"obvious clarity"** of a clear violation of Plaintiff's constitutional rights.

"... In these cases, the officer's conduct at issue lay "so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [him] notwithstanding the lack of [fact-specific] case law." *Lee*, 284 F.3d at 1199."
Gray *Ex Rel*. Alexander v. Bostic, 458 F.3D 1295, 1306, 1307 (11thCir. 2006).

The police chief and mayor cannot escape these conclusions as well.

Finally, the averments are that the police chief and city were aware of the violations as they occurred and/or learned thereof prior to the prosecution.

## IV. THE CITY KNEW OF THE VIOLATIONS, BUT REFUSED TO DISCONTINUE THE CONSTITUTIONAL VIOLATIONS.

"Supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Instead, supervisors can be held personally liable when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal

connection between the actions of the supervisor and the alleged constitutional violation. *Id.*

After the first incident occurred, the city was on notice of the illegal search which occurred. The police chief and supervisory personnel then permitted, and refused to stop, the wrongful illegal arrest and prosecution that followed. Therefore, the city is liable as well.

## V.   THE 'OBVIOUS CLARITY" OF THE CONSTITUTIONAL VIOLATION NECESSARILY REQUIRES A FINDING OF NEGLIGENCE IN THE FAILURE TO TRAIN, WHICH LED TO THE VIOLATION OF PLAINTIFF'S RIGHTS WITH A DELIBERATE INDIFFERENCE.

"...Finally, Gray emphasizes that Deputy Bostic received no training specifically addressing the detention of students. She contends that Sheriff Sexton should have foreseen that unwarranted handcuffed detentions of students were "bound to happen" without such training. Thus, Gray is arguing that the need to train was "so obvious" that the failure to do so constituted deliberate indifference without prior notice. *See Gold v. City of Miami*, 151 F.3d 1346, 1352 (11th Cir.1998)(addressing municipal liability for failure to train). ...

"...The Supreme Court has "hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.* (quoting *Bd. Of County Comm'rs v. Brown*, 520 U.S. 397, 409, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997))."
<u>Gray *Ex Rel*. Alexander v. Bostic</u>, 458 F.3d 1295, 1308 (11thCir. 2006).

As this case is one of "obvious clarity" as to both of the two (2) incidents of the violation of Plaintiff's Fourth

Amendment rights, Plaintiff has provided a fact pattern necessarily showing that the need to train was so obvious as to amount to deliberate indifference. Therefore, the 42 U.S.C. 1983 claim for negligent hire and failure to train should survive a motion to dismiss.

## VI. AS TO STATE LAW CLAIMS, PLAINTIFF CONCEDES THAT THE CITY WOULD NOT BE LIABLE FOR A STATE LAW MALICIOUS PROSECUTION CLAIM.

"Count V of Plaintiff's Complaint states a claim for malicious prosecution. A malicious prosecution action cannot lie against a municipality, because a municipality cannot be deemed to act with malice. *Franklin*, 670 So.2d at 850 (citing *Neighbors v. City of Birmingham*, 384 So.2d 113 (Ala.1980)). Similarly, Count VIII of Plaintiff's Complaint states a claim for intentional infliction of emotional distress. Intentional infliction of emotional distress, as the name indicates, involves intentional conduct, and thus the city may not be held liable. ..." Hardy v. Town of Hayneville, 50 F.Supp.2d 1176, 1191 (M.D.Ala. 1999).

## VII. THE INDIVIDUAL DEFENDANTS WOULD BE LIABLE FOR PLAINTIFF'S STATE LAW MALICIOUS PROSECUTION CLAIM.

Plaintiff has submitted hereinabove facts supporting his malicious prosecution claim should the claim be allowed only as a state law claim.

"(c)[19] A cause of action for malicious prosecution is not limited to the situation where the present defendant initiated the prior proceeding; it also arises in the situation where the present defendant continued the prior proceeding without probable cause, see *Hudson v. Chancey*, 385 So.2d 61, 62 (Ala.Civ.App. 1980), and one can be held liable for

malicious prosecution when he "takes some active part in the instigation or encouraging of the prosecution." W. Page Keeton, <u>Prosser and Keeton on Torts</u>, #119 (5th ed. 1984). "Tak[ing] some active part" includes advising or assisting another person to begin the proceeding and actively directing or aiding in the conduct of it. *Id.* <u>Poff v. Hayes</u>, 763 So.2d 234, 241 (Ala.2000).

**VIII. <u>TO THE EXTENT THAT THE CLAIM FOR NEGLIGENT HIRING AND TRAINING COULD BE CONSIDERED AS A STATE LAW CLAIM AND NOT UNDER 42 U.S.C. 1983, THEN THE CITY COULD BE LIABLE</u>.**

The negligent training/hiring theory is advanced under 42 U.S.C. 1983. It could also be cognizable as a state law claim.

"... On the other hand, the city may be held liable for negligent hiring, which Mr. Hardy asserts in Count VI of his Complaint. *See Couch v. City of Sheffield*, 708 So.2d 144, 154 (Ala.1998)(noting that a city has immunity under § 11-470-190 with respect to state law claims based on allegations of wanton or intentional conduct, **but not** with respect to allegations of negligence in failing to train, supervise, and discipline an employee).

**IX.  <u>CITY OFFICERS MAY BE LIABLE FOR STATE LAW CLAIMS OF FALSE IMPRISONMENT AND TRESPASS.</u>**

A.  The facts underlying this claim have been previously cited herein.

"Count IV states a claim for false imprisonment. False imprisonment "consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala.Code § 6-5-170 (1975). For there to be a false imprisonment, "there must besome direct restraint of the person; however, it is not necessary that there be confinement in a jail or a

prison. Any exercise of force, or the express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment." *Big B, Inc. V. Cottingham*, 634 So.2d 999, 1001 (Ala.1993). In *Franklin v. City of Huntsville*, 670 So.2d 848, 852 (Ala.1995), the Alabama Supreme Court expressly held that municipality is not immune from a claim of false arrest and imprisonment under section 11-47-190. Therefore, the Town of Hayneville may be held liable for false imprisonment, so long as the alleged tort arose from"neglect, carelessness, or unskillfulness. ..."

B.  The facts underlying a trespass action against both real property and personal property have been previously cited herein.

### "Nature and elements of trespass in general.

Under Alabama law, elements of trespass claim are:(1) an invasion affecting an interest in their exclusive possession of the plaintiff's property; (2) an intentional doing of an act which results in the invasion; (3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and (4) substantial damage to the res. -"
<u>Roberts v. City of Geneva</u>, 114 F.Supp.2d 1199 (M.D.Ala. 2000).

"Trespass to real property is similar to trespass to chattels in that trespass, generally, is a wrong against the right of possession. -"
<u>Poff v. Hayes</u>, 763 So.2d 234. (Ala. 2000)

" "Wantoness," in context of a claim for trespass, is an invasion of plaintiff's property with knowledge of the violation of plaintiff's rights in his or her property. "
<u>Dockins v. Drummond Co., Inc</u>., 706 So.2d 1235,

rehearing denied, and certiorari denied.(Ala.Civ.App. 1997).

Plaintiff submitted facts to support his trespass claim as well as to establish that the Defendants' actions were wanton.

## X.  DISCRETIONARY FUNCTION IMMUNITY FOR DEFENDANTS IS NOT FACTUALLY SUPPORTED IN THIS CASE.

The facts of this case fall within the exceptions to discretionary function immunity.

"... Section 6-5-338 extends discretionary function immunity to municipal police officers "unless the officer's conduct is so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." *Couch v. City of Sheffield*, 708 So.2d 144, 153 (Ala.1998)(citing *Wright v. Wynn*, 682 So.2d 1, 2 (Ala.1996)(per curiam)). ...

"...The Eleventh Circuit recognized this implication, refusing to extend sovereign immunity under the state constitution to municipal police officers. *Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir.1998). Because Edward Boyd and Clete Davis are municipal peace officers, statutory discretionary function immunity applies. First, the court must determine whether the officers were engaged in the performance of discretionary functions at the time the alleged torts occurred. Discretionary acts are "those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstance." *Wright v. Wynn*, 682 So.2d 1,2 (Ala.1996). If their acts were discretionary acts, "the burden shifts to the plaintiff to demonstrate that the defendants acted in bad faith, with malice or willfulness in order to deny them immunity. Acts of such nature are not

22

considered by Alabama law to be discretionary."
*Sheth*, 145F.3d at 1239 (citing *Wright v. Wynn*, 682
So.2d at 2). ...

"... Mr. Hardy states generally in his Complaint,
however, that "[a]ll of the acts, conduct, and
behavior of each of the Defendants, were performed
knowingly, intentionally, and maliciously...."
Compl. ¶ 62.

Accordingly, because Mr. Hardy asserts that the
Defendants possessed the requisite state of mind to
defeat application of discretionary function
immunity, Mr. Hardy may pursue all of his state law
claims against Clete Davis. Mr. Hardy may also
pursue his state law claims against Edward Boyd,
with the exception of his claim based on negligent
hiring. Because Mr. Hardy must show bad faith,
malice, or willfulness to overcome discretionary
function immunity, he cannot state a claim against
Edward Boyd for negligence."
Hardy v. Town of Hayneville, 50 F.Supp.2d 1176,
1192, 1194-95 (M.D.Ala. 1999).

The Plaintiff has submitted facts to support the police
chief's and officers' conduct in engaging in tortious conduct
in a knowing, intentional and malicious manner. Therefore,
Plaintiff's state law claims are sufficient to defeat a motion
to dismiss.

## **CONCLUSION**

Plaintiff has submitted sufficient facts construing the
facts favorably to Plaintiff to establish that the Defendant
Charles, police chief, mayor and city, engaged in violations
of Plaintiff's constitutional rights so as to justify his 42

U.S.C. 1983 claims.

Qualified immunity is not available in this case under Plaintiff's facts.

Additionally, Plaintiff has supported his state law claims against the individual Defendants. Plaintiff further submitted facts to reflect that discretionary immunity, likewise, is not available to these Defendants.

Finally, Plaintiff concedes that he has no state law malicious prosecution claim available to him against the city.

For the above and foregoing reasons, Plaintiff respectfully prays that Defendants' Motions be denied.

Respectfully submitted,

S/Donald G. Madison
DONALD G. MADISON (MAD008)
Attorney for Plaintiff Norman
Todd
418 Scott Street
Montgomery, Alabama 36104
Telephone (334) 263-4800
Facsimile (334) 265-8511

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Response to Motion to Dismiss was electronically filed and that the following parties will be electronically served on this the 9th day of March, 2007.

Natalie Ann Daugherty, Esquire

James W. Porter, II


S/Donald G. Madison