IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| NORMAN TODD, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   CASE NO. 2:07-cv-149-MEF |
| | ) |
| CITY OF CLANTON, et al., | ) |
| | ) |
|     Defendants. | ) |

**RESPONSE OF PLAINTIFF TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**NARRATIVE SUMMARY OF FACTS**

    1.    The Police Report [Exhibit 1 (Doc 22-2, pages 6 and 7 of 19), to Defendants' Motion to Dismiss] is dated January 10, 2005. It is signed by Christy Littlejohn. The Report states that Corporal G. S. Charles is the reporting officer shown on said Report (Doc. 22-2, page 7 of 19).

    2.    The Warrant of Arrest was not signed until January 11, 2005 (Doc. 22).

    3.    The Certificate of Execution for the illegal arrest is signed at 11:30 p.m. on January 11, 2005. The Supervisor's signature appearing thereon is Sergeant Richard E. Todd.

    4.    The Complaint appears in Document 22-2 at page 8 of 19. It is signed January 11, 2004 (sic).[1]

    5.    Christy Littlejohn's Voluntary Statement (Doc. 22-2, page 17 of 19) is also dated January 11, 2005, and not the date of the Incident Report (I.O.) made by Officer Charles on January

---

[1]This was apparently an error and should have read "2005".

10, 2005. In the I.O., Ms. Littlejohn stated that she called Mr. Todd (referred to by Officer Charles in the Affidavit) on December 3, 2004.

In her January 11, 2005, Voluntary Statement, Ms. Littlejohn adds to the facts set out in the January 10, 2005, I.O. prepared by Officer Charles. In the January 11, 2005, Voluntary Statement, she stated that she (Ms. Littlejohn) went by Mr. Todd's mobile home and left a letter on January 3, 2005. This act acknowledged that Ms. Littlejohn did not have a key as she did not go inside.

6. Ms. Debra Allison's Affidavit is attached to Defendants' evidentiary submission as Doc 22-3. On the first page of her Affidavit, Ms. Allison stated that Christy Littlejohn wanted access to get her things out of the trailer. She further stated that she went with Ms. Littlejohn to the trailer. Ms. Allison also stated that Ms. Littlejohn had her own key.

Ms. Allison further acknowledged that Officer Charles arrived at the mobile home. Ms. Allison, while stating that Officer Charles did not influence her nor order her (Ms. Allison) to go with Ms. Littlejohn to the mobile home, did acknowledge his presence at the mobile home, stating, "He simply stood outside the trailer and waited for her to collect her belongings, and then he left." (Doc. 22-3, page 3 of 3).

7. By Order dated September 19, 2007, this Honorable Court in paragraph 2 thereof ordered the Defendants to submit with their response the search warrant for Plaintiff's mobile home. No such search warrant was submitted.

8. Plaintiff has submitted his Affidavit [Exhibit 1]; the Affidavit of Christine Thomas [Exhibit 2], the former owner of the Ashley Court Trailer Park (at the time Norman H. Todd leased his mobile home); and the Affidavit of Michelle Mullis [Exhibit 3], as Plaintiff's Evidentiary Submissions in support of Plaintiff's response to the City's Motion for Summary Judgment.

2

9.      According to Plaintiff's Affidavit and its Exhibits ((a) lease and (B) bond) the lease at 550 Ashley Court was solely in Plaintiff's name. He was the sole tenant/leasee under the lease and, therefore, the only person entitled to occupancy and possession of the mobile home.

Plaintiff testified that he was arrested at 11:30 p.m. on January 16, 2005, as evidenced by the bond, which is the same date his mobile home was entered and ransacked according to Debra Allison's Affidavit. This was five (5) days after the initial IO was submitted by Officer Charles.

Plaintiff testified that when he arrived at home on January 16, 2005, he discovered that his mobile home had been ransacked, a door apparently kicked off of its hinges, personal property was strewn everywhere. He further discovered that several items were removed from his mobile home including two rings and keys. Plaintiff further testified that Christy Littlejohn did not have a key to his mobile home. Plaintiff testified that Michelle Mullis was with him when he confronted Debra Allison regarding what had happened to his mobile home. Michelle Mullis' Affidavit is attached as Exhibit 3 hereto. Ms. Mullis testified that she was present when Plaintiff questioned Debra Allison.

According to both Plaintiff's Affidavit and Ms. Mullis' Affidavit the contemporaneous conversation which they had with Ms. Allison at the time of this incident, as well as what Ms. Allison told them, is inconsistent with what Ms. Allison stated in her Affidavit.

Both Plaintiff and Ms. Mullis testified that Ms. Allison told them that both Christy Littlejohn and Officer Charles approached Ms. Allison and demanded that Ms. Allison open the door to Plaintiff's mobile home to permit Ms. Littlejohn to enter. Furthermore, Plaintiff and Ms.Mullis stated that Ms. Allison (the landlady) said that she went with Ms. Littlejohn and Officer Charles to Plaintiff's mobile home and that she (Ms. Allison) waited outside while Ms. Littlejohn and Officer

Charles went inside the Plaintiff's mobile home.

Plaintiff further confirmed the inconsistency of Ms. Allison's statement that Christy Littlejohn had a key to the mobile home where he testified that Ms. Littlejohn did not have a key to the mobile home. This inconsistent statement was further discredited by Ms. Littlejohn's voluntary statement wherein she stated that she went by the Plaintiff's mobile home on January 10, 2005 and left a letter on the door of Plaintiff's mobile home as Mr. Todd noted in his Affidavit (in other words, if Ms. Littlejohn had a key, why did she leave the letter taped on the outside of the door).

Plaintiff also submitted the Affidavit of Christine Thomas (Exhibit 2 hereto). Ms. Thomas was the owner of the Ashley Court Mobile Home Park at the time Plaintiff leased his mobile home. Ms. Thomas stated that after Plaintiff called her about the incident, she called Ms. Allison and questioned Ms. Allison. Ms. Thomas stated that Ms. Allison told her that Officer Charles and Ms. Littlejohn went to Ms. Allison's mobile home in Ashley Court and that Officer Charles had demanded that Ms. Allison provide Ms. Littlejohn and Officer Charles access to Plaintiff's mobile home. Ms. Thomas further testified that Ms. Allison told her (Ms. Thomas) that Ms. Allison felt as though she had to comply with Officer Charles' request and, therefore, Ms. Allison went with them to open Plaintiff's mobile home to let them in . Ms. Thomas further testified that she has read Ms. Allison's Affidavit and that her Affidavit is inconsistent with what Ms. Allison told her regarding Officer Charles' participation in gaining access; Officer Charles' entry into the mobile home; and the fact that Ms. Littlejohn did not have a key (that Ms. Allison had to let them in).

10.   Christy Littlejohn's Incident Report prepared by Officer Charles on January 10, 2005, and her Complaint dated January 11, 2005, both clearly reflected nothing more than a civil matter alleging a breach of contract between Ms. Littlejohn and Plaintiff. Ms. Littlejohn acknowledged the

4

agreement she had with Plaintiff for his use and occupancy of the automobile she bought; she alleged failure of payments; and, further, alleged a fear that she would not be able to obtain possession of the vehicle (Plaintiff had not returned the car); and that the finance company was going to repossess the car.

The Complaint, on its face, clearly stated nothing more than an alleged breach of contract - solely a civil complaint.

11.     Regarding supervisory knowledge of this incident, Plaintiff submitted in his Affidavit **prior** to his arrest that he found out about the arrest warrant from his cousin, Sergeant Todd, whom was third shift supervisor with the City of Clanton at the time of the incident. Sergeant Todd's name also appeared on Plaintiff's Appearance Bond (Doc 22-2, page 18 of 19).

Plaintiff testified that Sergeant Todd told him that the Complaint was clearly a civil matter and would probably be dismissed. Furthermore, the documents show that Officer Charles filed an incident report five (5) days before the arrest. Ms. Littlejohn's Complaint was signed four (4) days before the arrest. Ms. Allison's Affidavit stated that Officer Charles went to the mobile home on January 16, 2005, four (4) days after the Complaint was signed.

12.     Plaintiff testified in his Affidavit that he was a former police officer, having attended the City of Montgomery Alabama's Police Training Academy. He further testified that based upon his education, training and experience, he learned that police officers were not supposed to become involved in civil matters. Plaintiff testified that Ms. Littlejohn's Complaint confirms that there was an agreement between them concerning his having right to possession of the car; that she had purchased the car; and that he was making the payments in accordance with that agreement. Plaintiff testified that his education, training and experience, Officer Charles should have known that he could

5

not enter the mobile home, nor aid someone in entering Plaintiff's mobile home without a search warrant to do so.

In fact, Ms. Thomas in her Affidavit testified that she and Chief Henderson had a conversation regarding who leased the property after the incident. Ms. Thomas stated that when she showed Chief Henderson that the lease was only in Plaintiff's name that he responded, "Oh sh_t." Ms. Thomas stated that she told Chief Henderson that they could not enter the Plaintiff's mobile home without a search warrant. Chief Henderson's response was an apparent admission of that fact. Ms. Thomas, also, tsetified that she told the Chief that he knew the Officer entered without a search warrant.

Notwithstanding, the on its face invalidity of the charge, Plaintiff stated in his Affidavit that standard operating procedure would have required Officer Charles to call in his dispatch as to where and why Officer Charles was dispatching to the mobile home park. Plaintiff testified that said procedure would have involved the dispatch information to be relayed to Officer Charles' supervisor at that time.

13.     Plaintiff further testified that when he attended Court the magistrate (a City employee) signing the Complaint when questioned by the Court as to why she allowed a civil matter to be the basis of the misdemeanor Complaint, stated that she felt pressured by Officer Charles to sign the Complaint and Warrant.

**BRIEF AND MEMORANDUM OF LAW**

I. **PLAINTIFF CONCEDES THAT THE OFFICIAL CAPACITY CLAIMS ARE "FUNCTIONALLY EQUIVALENT" TO A CLAIM AGAINST THE CITY**

Counsel for Plaintiff, while denying that the City is not liable for Plaintiff's claims, does

concur that the official capacity allegations are "functionally equivalent" to a claim against the City as cited in Section I(A), pages 7 through 9 of "Defendants' Brief in Support of Defendants' Motion for Summary Judgment".

II. **THE FACTS OF THIS CASE AND PLAINTIFF'S CONSTITUTIONAL CLAIMS DO NOT INVOLVE THE PERFORMANCE OF A DISCRETIONARY FUNCTION ACTION TO INVOKE QUALIFIED IMMUNITY; THEREFORE, THE BURDEN TO ESTABLISH QUALIFIED IMMUNITY HAS NOT SHIFTED TO PLAINTIFF.**

As is undisputed, the Incident Report was prepared on January 10, 2005, by Officer Charles. The Complaint was signed on January 11, 2005. The illegal entry into the Plaintiff's mobile home occurred on January 16, 2005. Plaintiff's illegal arrest and detention occurred on January 16, 2005. Therefore, this was not a case where a "hard and fast" and/or "spur of the moment" decision had to be made. The facts underlying this incident took place over a five-day period.

Supervisory personnel were aware, or should have been aware, of the on its face invalid Complaint before January 16, 2005; and, in fact, were aware prior to Plaintiff being arrested through Sergeant Todd's admission, according to Plaintiff's Affidavit, of a minimum that he (Sergeant Todd also in a supervisory position) knew the Complaint asserted against Plaintiff was strictly a civil matter.

The required dispatch of Officer Charles traveling to the mobile home park should have placed supervisory personnel on notice of the illegal actions in which Officer Charles was engaging simply by his going to the mobile home park to assist Ms. Littlejohn. Supervisory personnel likewise knew that no search warrant had issued between January 10, 2005, and January 16, 2005, to permit any entry into Plaintiff's mobile home. There was no legitimate police action which necessitated Officer Charles' dispatch to the mobile home park.

7

> "The Eleventh Circuit recognized this implication, refusing to extend sovereign immunity under the state constitution to municipal police officers. *Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir. 1998). Because Edward Boyd and Clete Davis are municipal peace officers, statutory discretionary function immunity applies. First, the court must determine whether the officers were engaged in the performance of discretionary functions at the time the alleged torts occurred. Discretionary acts are "those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." *Wright v. Wynn*, 682 So.2d 1, 2 (Ala. 1996). If their acts were discretionary acts, "the burden shifts to the plaintiff to demonstrate that the defendants acted in bad faith, with malice or willfulness in order to deny them immunity. Acts of such nature are not considered by Alabama law to be discretionary." *Sheth*, 145 F.3d at 1239 (citing *Wright v. Wynn*, 682 So.2d at 2)."
> Hardy v. Town of Hayneville, 50 F.Supp.2d 1176, 1195, 1196 (M.D. Ala. 1999).

In this case the facts clearly refute that discretionary function was involved. The complained of actions occurred over a five-day period and were not the problems of a "hard and fast" rule requiring prompt decision making and exercise of judgment.

### III. PLAINTIFF'S CONSTITUTIONAL CLAIMS ARE OF "OBVIOUS CLARITY" THEREBY PROVIDING THE CITY FAIR WARNING OF AN OBVIOUS CONSTITUTIONAL VIOLATION.

    A.    CASE LAW THAT AN ARREST WITHOUT OFFICIAL BELIEF THAT THE AFFIDAVIT ESTABLISHED PROBABLE CAUSE WAS CLEARLY ESTABLISHED BY THE MIDDLE DISTRICT OF ALABAMA AS EARLY AS 2001.

> "Turning to federal case law, it is clearly established that a police officer can be held liable if an arrest is made under the authority of a warrant when no reasonable officer could have believed that the affidavits established probable cause. *See Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). *Malley* does not, however, address the extent to which a failure to disclose information after an affidavit is sworn to violates constitutional rights."
> Glidewell v. Town of Gantt, 176 F.Supp.2d 1263, 1269 (M.D.Ala. 2001).

The Complaint in this case is so lacking in any averment of probable cause that a crime had been committed that no reasonable officer could have believed that the Affidavit established

probable cause. Additionally, supervisory personnel acknowledged that the Complaint was nothing more than a civil matter. Therefore, no prior custom or policy is required where the constitutional violations are those of obvious clarity.

    **B.**    A SEARCH OF A PREMISES WITHOUT A WARRANT IS AN UNQUESTIONABLY KNOWN AND OBVIOUSLY CLEAR FOURTH AMENDMENT CONSTITUTIONAL VIOLATION ALREADY ESTABLISHED AT THE TIME OF THIS INCIDENT.

> "e. Violations of Plaintiffs' Fourth
> Amendment Rights to Privacy
> in their Home
>
> Plaintiffs assert that Defendant Bowman violated their Fourth Amendment Rights to privacy in their own home. (Amend. Compl. ¶ 59d) The court finds that this claim is a derivative of Plaintiffs' Fourth Amendment claim for warrantless search and seizure. *See Lenz*, 51 F.3d at 1548 (citizens' security in their homes lies at the core of the Fourth Amendment, hence a violation of this right infringes upon a person's reasonable expectation of privacy)...."
> Ross v. State of Alabama, 15 F.Supp.2d 1173, 1189 (M.D.Ala. 1998)

Officer Charles aided the entry into Plaintiff's mobile home, as well as entered the same, without a search warrant. This Court ordered the Defendants to submit a search warrant, which the Defendants failed to submit. Therefore, Plaintiff submitted a prima facie case of a Fourth Amendment violation which was clearly established at the time of the incident.

    **C.**    IN THE ABSENCE OF A FACTUALLY SIMILAR CASE, AN OFFICIAL CAN HAVE FAIR WARNING OF VIOLATION OF CONSTITUTIONAL RIGHTS.

Under obvious clarity cases, Plaintiff is not required to establish custom or policy violations. One incident is sufficient to invoke liability.

> "D. *Clearly Established Law*
>
> Whether a constitutional right was "clearly established" at the time of the violation turns on "'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Bashir*, 445 F.3d at 1330 (quoting

*Saucier*, 533 U.S. at 202, 121 S.Ct. At 2156). ..."

"...    However, our inquiry does not end here. Even in the absence of factually similar case law, an official can have fair warning that his conduct is unconstitutional when the constitutional violation is obvious, sometimes referred to as "obvious clarity" cases. *See United States v. Lanier*, 520 U.S. 259, 271, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997) ("[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] been previously held unlawful." (Quotation marks omitted)); *Vinyard v. Wilson*, 311 F.3d 1340, 1350-51 (11th Cir. 2002).

The Fourth Amendment's general proscription against "unreasonable" seizures seldom puts officers on notice that certain conduct is unlawful under precise circumstances. *Evans v Stephens*, 407 F.3d 1272, 1283 (11th Cir. 2004) (en banc). Nonetheless, on rare occasion we have concluded that general Fourth Amendment principles make the constitutional violation obvious." ...

"...    In these cases, the officer's conduct at issue lay "so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [him] notwithstanding the lack of [fact-specific] case law." *Lee*, 284 F.3d at 1199"
Gray Ex Rel. Alexander v Bostic, 458 F.3d 1295, 1306-07 (11th Cir. 2006)

**D.    THE ARREST OF PLAINTIFF VIOLATED A FEDERALLY PROTECTED RIGHT.**

"A. Section 1983

"An individual has a federally protected right to be free from unlawful arrest and detention resulting in a significant restraint of liberty and violation of this right may be grounds for suit under 42 U.S.C. § 1983. *Von Stein v. Brescher*, 904 F.2d 572, 579 (1th Cir. 1990); *Dennis v. Warren*, 779 F.2d 245, 247 (5th Cir. 1985). An arrest is unlawful if it is not supported by probable cause. *Lowe v. Aldridge*, 958 F.2d 1565, 1570 (11th Cir. 1992). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992). Probable cause determinations traditionally have been guided by reviewing the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)."
Babers v. City of Tallassee, Ala., 152 F.Supp.2d 1298, 1303 (M.D.Ala. 2001.

It is clear that the Complaint lacked any averment of probable cause that an offense was committed. There was no probable cause to warrant Plaintiff's arrest.

  **E.**  OFFICER CHARLES ACTED UNDER COLOR OF LAW.

It is undisputed that Officer Charles was present at the Plaintiff's mobile home at the time of the illegal entry into Plaintiff's mobile home.

> "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state," *Almand v. DeKalb County*, 103 F.3d 1510, 1513 (11th Cir. 1997). *Cert. Denied*, 522 U.S. 966, 118 S.Ct. 411, 139 L.Ed.2d 314 (1997), including misuse of power made possible only because the employee is clothed with the authority of state law. *Burrell v. Board of Trustees*, 970 F.2d 785, 790 n. 12 (11th Cir. 1992), *cert. Denied*, 507 U.S. 1018, 113 S.Ct. 1814, 123 L.Ed.2d 445 (1993)...."

> "...Indeed, "off-duty police officers who flash a badge or otherwise purport to exercise official authority generally act under color of law." *Bonenberger v. Plymouth Township*, 132 F.3d 20, 24 (3rd Cir. 1997)."
> Ott v. City of Mobile, 169 F.Supp.2d 1301, 1307 (S.D.Ala. 2001).

**IV.** **PLAINTIFF ADOPTS HIS RESPONSE TO MOTION TO DISMISS AND BRIEF AND MEMORANDUM OF LAW HEREIN AS TO STATE LAW CLAIMS OF PLAINTIFF.**

**V.** ***FRCP* RULE 56 (e) PERMITS OPPOSING AFFIDAVITS ON FACTS AS WOULD BE ADMISSIBLE IN EVIDENCE.**

*Federal Rules of Civil Procedure* Rule 56 (e) states as follows:

> "**(e) Form of Affidavits; Further Testimony; Defense Required**. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

For purposes of this Summary Judgment Response, Plaintiff has submitted Affidavits incorporating testimony of admissions against interest, as well as inconsistent statements to rebut testimony offered by Defendants. This evidence is admissible at trial and, therefore, competent

11

evidence.

    **(i)**    **THE STATEMENTS ATTRIBUTED TO SERGEANT TODD AND EMPLOYEES OF THE CITY ARE ADMISSIBLE UNDER FEDERAL RULE 801 (D) (2) (*FRCP*)**

*FRCP* Rule 801 (d) (2) identified statements which are not considered hearsay. It states:

"**Rule 802.** ...

"... **(d) Statements which are not hearsay.** A statement is not hearsay if – ..."

"... **(2) Admission by party-opponent.** The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship,..."

The statements attributed to the City's supervisory personnel and as to what Ms. Littlejohn said qualify under this Rule as competent and admissible evidence at trial for *FRCP* Rule 56 (e) purposes.

    **(ii)**   **THE INCONSISTENT STATEMENTS OF DEBRA ALLISON SUBMITTED IN PLAINTIFF'S AFFIDAVIT AND AFFIDAVITS OF CHRISTINE THOMAS AND MICHELLE MULLIS ARE ADMISSIBLE AS PRIOR INCONSISTENT STATEMENT PURSUANT TO *FRCP* RULE 801 (d) (1).**

All three individual Affidavits show that the contemporaneous statements made by Ms. Allison **at the time of the incident** are inconsistent with what she had said in her Affidavit submitted by Defendants. The Defendants' evidentiary submissions, also, reflect their inconsistencies. For instance, where Ms. Littlejohn went by Plaintiff's mobile home and taped a letter on his door. If she had a key, there was no need to do this act. *FRCP* Rule 802 (d) (1) permits submission of those inconsistent statements as admissible evidence. The Rule states:

12

> "**Rule 802.** ...
>
> "... **(d) Statements which are not hearsay.** A statement is not hearsay if –
>
> ..."    **(1) Prior statement by witness.** The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. Or (C) one of identification of a person made after perceiving the person; or ..."
>
> "...    **(A)** Prior inconsistent statements traditionally have been admissible to impeach but not as substantive evidence. Under the rule they are substantive evidence. As has been said by the California Law Revision Commission with respect to a similar provisions:..."

The committee comments to *FRCP* 802 make clear the admissibility of prior inconsistent statements. In fact, the comments parallel the Plaintiff's logic in submitting the inconsistent statements of Debra Allison contemplated in the comments.

> "...    Section 1235 admits inconsistent statements of witnesses because the dangers against which the hearsay rule is designed to protect are largely nonexistent. The declarant is in court and may be examined and cross-examined in regard to his statements and their subject matter. In many cases, the inconsistent statement is more likely to be true than the testimony of the witness at the trial because it was made nearer in time to the matter to which it relates and is less likely to be influenced by the controversy that gave rise to the litigation. The trier of fact has the declarant before it and can observe his demeanor and the nature of his testimony as he denies or tries to explain away the inconsistency. Hence, it is in as good a position to determine the truth or falsity of the prior statement as it is to determine the truth of falsity of the inconsistent testimony given in court. Moreover, Section 1235 will provide a party with desirable protection against the 'turncoat' witness who changes his story on the stand and deprives the party calling him of evidence essential to his case." Comment, California Evidence Code § 1235. See also McCormick § 39. The Advisory Committee finds these views more convincing than those expressed in *People v. Johnson*, 68 Cal.2d 646, 68 Cal.Rptr. 599, 441 P.2d 111 (1968). The constitutionality of the Advisory Committee's view was upheld in *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Moreover, the requirement that the statement be inconsistent with the testimony given assures a thorough exploration of both versions while the witness is on the stand and bars any

general and indiscriminate use of previously prepared statements."

## CONCLUSION

Based upon the above and foregoing, Plaintiff has shown that there are genuine issues of material fact on Plaintiff's Fourth Amendment claims underlying his 42 U.S.C. 1983 action so that the Defendants are not entitled to a judgment as a matter of law.

Therefore, Plaintiff respectfully submits that Defendants' Motion for Summary Judgment should be denied.

```
                              Respectfully submitted,
                              /S/Donald G. Madison
                              DONALD G. MADISON (MAD 008)
                              Attorney for Plaintiff
                              418 Scott Street
                              Montgomery, Alabama 36104
                              Telephone (334) 263-4800
                              Facsimile (334) 265-8511
                              E-Mail dgmadison@bellsouth.net
                                     btjarvis1@bellsouth.net
```

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed and that a copy of same will be electronically served upon the following parties on this the 2nd day of November, 2007.

James W. Porter, II, Esquire
Porter, Porter & Hassinger
Post Office Box 128
Birmingham, Alabama 35201-0128
Email: jwporders@pphlaw.net

Natalie Ann Daugherty
Porter, Porter & Hassinger
215 21st Street North
Suite 1000
Post Office Box 128
Birmingham, Alabama 35203
Email: ndaugherty@pphlaw.net           /S/Donald G. Madison