IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **NORMAN TODD**, | |
| Plaintiff, | |
| vs. | CASE NUMBER 2:07-CV-149-MEF |
| **CITY OF CLANTON, ALABAMA**, a municipal corporation; by and through its **MAYOR, HONORABLE BILLY JOE DRIVER**, in his official capacity as Mayor and individually; **POLICE CHIEF JAMES HENDERSON**, in his official capacity, as well as individually; **CORPORAL GREG CHARLES**, in his official capacity and individually; and **CHRISTINE LITTLEJOHN**, an individual, | JURY TRIAL DEMANDED |
| Defendants. | |

## <u>DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

COME NOW the City of Clanton, Alabama, a municipal organization, Mayor Billy Joe Driver, Chief James Henderson, and Corporal Greg Charles to file their Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment, and state as follows:

1.     Defendants incorporate by reference the following submissions:

A.     Defendants' Motion to Dismiss and Exhibits attached thereto;

B.    Defendants' Reply to Plaintiff's Response to Evidentiary
       Submissions made by Defendants;

C.    Defendants' Motion for Summary Judgment, the Brief and
       Evidentiary Submissions in Support thereof, including Exhibits
       attached thereto;

D.    Defendants' Objection to Plaintiff's Evidentiary Submission
       and Motion to Strike; and

E.    Defendants' Reply to Plaintiff's Counter Motion for Summary
       Judgment.

## <u>STATEMENT OF THE CASE</u>

Defendants incorporate by reference and refer to the Statement of the Case
as set forth in their Brief in Support of Defendants' Motion for Summary
Judgment.

Defendants filed their Motion for Summary Judgment and their Brief and
Evidentiary Submissions in Support thereof on or about October 3, 2007.  On or
about November 2, 2007, Plaintiff filed his Counter Motion for Summary
Judgment, Reply to Defendants' Motion for Summary Judgment,[1] Response to
Defendants' Motion for Summary Judgment, and Evidentiary Submission in

_____

1 It should be noted that Plaintiff curiously states in his Reply to Defendants' Motion for Summary Judgment at ¶ 5

Support of Plaintiff's Response to Defendant's Motion to Dismiss/Motion for Summary Judgment.  Defendants now file their Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment and file contemporaneously herewith Defendants' Reply to Plaintiff's Counter Motion for Summary Judgment and Defendants' Objection to Plaintiff's Evidentiary Submission and Motion to Strike.

## **STATEMENT OF FACTS**

Defendants incorporate by reference and refer to the Statement of Facts as set forth in their Brief in Support of Defendants' Motion for Summary Judgment.  However, the Plaintiff attempts to submit facts into evidence via Affidavits based on hearsay statements, to which the Defendants contemporaneously herewith file their Objection to Plaintiff's Evidentiary Submission in Support of Plaintiff's Response to Defendants' Motion to Dismiss/Motion for Summary Judgment and Motion to Strike the "Affidavit of Christine Thomas (Plaintiff's Exhibit 2)" and the "Affidavit of Michelle Mullins (Plaintiff's Exhibit 3)."  Finally, Plaintiff mixes disputes of law in with his "Narrative Fact" section in his Counter Motion for Summary Judgment, which was addressed in Defendants' Reply to Plaintiff's Counter Motion for Summary Judgment.  To the degree that the law is intertwined therein, Defendants dispute the law but assume the **_facts_** are not in dispute for the

---

that "there are genuine issues of material fact," yet contemporaneously therewith files his own Motion for Summary Judgment claiming that there are no genuine issues of material fact.

sake of Summary Judgment.

## ARGUMENT

## I.    PLAINTIFF CONCEDES THAT THE OFFICIAL CAPACITY CLAIMS ARE "FUNCTIONALLY EQUIVALENT" TO A CLAIM AGAINST THE CITY

The parties concur that Plaintiff's official capacity allegations are

functionally equivalent to a claim against the City.

### A.    PLAINTIFF'S OFFICIAL CAPACITY CLAIMS ARE DUE TO BE DISMISSED

Every claim made against Mayor Driver, Chief Henderson, and Officer Greg

Charles in their official capacities are due to be dismissed.  See Complaint.  Claims

against the City's agents in their official capacity are tantamount to suing the City,

*qua* City.  See Brandon v. Holt, 469 U.S. 464, 473 (1985) (Suit against director in

his official capacity was in effect suit against the city); Busby v. Orlando, 931 F.2d

764, 776 (11th Cir. 1991) (Section 1983 suits against municipal officers in their

official capacity and direct suits against municipalities are functionally equivalent);

Holley v. City of Roanoke, Alabama, 162 F.Supp.2d 1335 (M.D. Ala. 2001)

(Section 1983 claims against city officials in their official capacity were

"functionally equivalent" to claims against the city).

The Eleventh Circuit Court of Appeals has specifically decided the question

of whether a claim against a police chief and other police officers in their official

4

capacity should be dismissed when the claim has also been made or could have been made against the municipality.  See Busby, 931 F.2d at 776.  In Busby v. Orlando, Busby sued the City of Orlando and several of its agents, including its police chief and police officers, in their individual and official capacities.  See id. at 770.  The Eleventh Circuit recognized that

> [b]ecause suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond).

Id. at 776.  Therefore, the Eleventh Circuit held that the claims against the police chief and the police officers in their official capacity were properly disposed of by directed verdict.  Id.

In Holley, the mayor of Roanoke and several other municipal officials were sued under Section 1983 in both their individual and official capacities.  See Holley, 162 F.Supp.2d at 1341 n.2.  In that case, the United States District Court for the Middle District of Alabama held that

> Claims against municipal officers in their official capacity are "functionally equivalent" to claims against the entity they represent.  Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir.1991).  To retain this suit as one against Mayor Ziglar and the Council Defendants in their official capacity and also as one against the City of Roanoke would be "redundant and possibly confusing to the jury."  Id.  The court, therefore, will dismiss the section 1983 discrimination claims against

Mayor Ziglar and the Council Defendants in their official capacities.  <u>See</u> <u>id.</u> (affirming

directed verdict as to official capacity defendants where city remained as defendant).

<u>Id.</u> at 1341 n.2.  The case at hand presents the same concerns.  Therefore, the

claims against Mayor Driver, Chief Henderson, and Officer Greg Charles are due

to be dismissed, and summary judgment is due to be entered in their favor.

## II.   **<u>MAYOR DRIVER, CHIEF HENDERSON, AND OFFICER GREG CHARLES ARE ENTITLED TO DISCRETIONARY FUNCTION IMMUNITY</u>**

Plaintiff argued in his Response of Plaintiff to Defendants' Motion for

Summary Judgment that no discretionary function was involved when Defendant

Charles went to the Ashley Court Mobile Home Park.  The Plaintiff argued that

"[t]he complained of actions occurred over a five-day period and were not the

problems of a 'hard and fast' rule requiring prompt decision making and exercise

of judgment."  Response of Plaintiff to Defendants' Motion for Summary

Judgment, p. 8.  Indeed, Defendants agree that there was no "hard and fast rule" in

place to dictate to Defendants how to handle the situations made the basis of

Plaintiff's Complaint, which is exactly why Defendants relied on decision making

and exercise of judgment.

Further, Plaintiff notes that "complained of actions took place over a five

6

day period," but Plaintiff only addressed one complained of action regarding discretionary function immunity, that is the activity at Plaintiff's mobile home (outside of and apart from the allegations made by Plaintiff stemming from a separate incident, his arrest.)  Simply because Plaintiff alleges charges from separate incidents that allegedly took place over a five day period, there is no set of facts to assume that any one alleged incident (i.e., that which occurred at the trailer park) stretched over the entire five day period.

Municipal officials and employees performing discretionary functions that are executive and administrative in nature are entitled to immunity.

As to the allegations against <u>Chief Henderson and Police Officer Greg Charles</u>, the CODE OF ALABAMA set out that:

> (a)  <u>Every peace officer</u>, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such <u>shall have immunity from tort liability arising out of his or</u>

<u>her conduct in performance of any discretionary function within
the line and scope of his or her law enforcement duties</u>.

(b)     This section is intended to extend immunity only to <u>peace officers
and governmental units or agencies</u> authorized to appoint peace
officers . . . .

ALA. CODE § 6-5-338(a) and (b) (1975) (emphasis added).  As to a peace officer's

discretionary function immunity, see <u>Williams v Crook</u>, 741 So. 2d 1074 (Ala.

1999), *abrogation recognized by* <u>Ex parte City of Tuskegee</u>, 932 So.2d 895 (Ala.

2005) *and* <u>Blackwood v. City of Hanceville</u>, 936 So.2d 495 (Ala. 2006) (Although

"abrogated," <u>Williams</u> states "[a]s this Court has previously held, though, public

officials, including municipal employees, have substantive immunity from tort

liability for actions taken while they are acting in the line and scope of their official

duties and are engaged in the exercise of a discretionary function."  741 So. 2d

1074, 1076, citing <u>Phillips v. Thomas</u>, 555 So. 2d 81, 84 (Ala. 1989), an un-

abrogated case that is still "good law."  Further, the cases that "abrogate" <u>Williams</u>

contemplate <u>Ex parte Cranman</u>, 792 So. 2d 392 (Ala. 2000), decided after <u>Williams</u>

and fully set out below.); <u>Point Prop., Inc. v. Anderson, et al.</u>, 584 So. 2d 1332

(Ala. 1991); and <u>Phillips v. Thomas</u>, 555 So. 2d 81 (Ala. 1989).  As to a

governmental unit's discretionary function immunity via a peace officer's

discretionary function immunity, see <u>Howard v. City of Atmore, et al.</u>, 887 So. 2d

201, 211 (Ala. 2003) ("It is well established that, if a municipal peace officer is

8

immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune."); see also ALA. CODE § 11-47-190 (1975).

In Moore v. Adams, the Supreme Court of Alabama defined "discretionary acts" as

> those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take, and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances.

754 So. 2d 630, 632 (Ala. 1999) (citing Wright v. Wynn, 682 So. 2d 1, 2 (Ala. 1996); L.S.B. v. Howard, 659 So. 2d 43 (Ala. 1995)).

Ex parte Cranman, 792 So. 2d 392 (Ala. 2000) **extends immunity to all state actors** (including Mayor Driver in the case at bar) and offers additional immunity to law enforcement officers beyond ALA. CODE § 6-5-338.  In Ex parte Cranman, the Alabama Supreme Court restated the applicable factors concerning discretionary function immunity and held that:

> A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
> (1) formulating plans, policies, or designs; or
> (2) **exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:**
>     (a) making administrative adjudications;
>     (b) allocating resources;
>     (c) negotiating contracts;
>     (d) **hiring, firing, transferring, assigning, or supervising**

9

      **personnel; or**

(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or

(4) **exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or**

(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

Ex parte Cranman, 792 So. 2d at 405 (emphasis added).  The conduct described in the Complaint clearly falls within this definition and, therefore, Mayor Driver, Chief Henderson, and Officer Greg Charles are entitled to discretionary function immunity.

    Furthermore, in order for a municipal official or employee to be exempt from discretionary function immunity, they must act fraudulently, willfully, maliciously, or in bad faith.  See Ryan v. Hayes, 831 So. 2d 21 (Ala. 2002).

      Defendants' Evidentiary Submission, Exhibit 2, clarifies that Officer Greg Charles did not act to trespass on the Plaintiff's property, and neither Mayor Driver nor Chief Henderson were present on or near the Plaintiff's property, so they clearly cannot be guilty of trespass.  Plaintiff's allegation that Officer Charles trespassed onto Plaintiff's property is based entirely on hearsay evidence, and said evidence is due to be stricken.  See Defendants' Objection to Plaintiff's

Evidentiary Submission and Motion to Strike.  **Even if the Defendants actually**

**trespassed**, *which they did not*, there is no evidence of malicious conduct as to

deprive the Defendants of their entitlement to discretionary function immunity.

Their immunity, in turn, immunizes the City as well.  Therefore, summary

judgment is due to be entered in favor of the Defendants.

III.    **THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR**
        **VIOLATIONS UNDER THE FIRST, FOURTH, FIFTH, AND**
        **FOURTEENTH AMENDMENTS**

The Plaintiff fails to make any factual allegations supporting his claims that

the Defendants violated his First, Fourth, Fifth, and Fourteenth Amendment rights.

 See Complaint. The Plaintiff does not allege that the City, nor any of its agents,

took any of his property.  See Complaint.  He only alleges that Defendant

Littlejohn took some items from her place of residence.  See Complaint.  Further,

the Plaintiff has not alleged anyway in which the City, Mayor Driver, or Chief

Henderson violated his constitutional rights in the supervision, training, or hiring

of Officer Greg Charles.  Moreover, the Plaintiff does not allege that the City, nor

any of its agents, violated his rights to free speech, association, or religion.  See

Complaint.  These claims are completely unfounded and frivolous and summary

judgment is due to be entered in favor of the City, Mayor Driver, Chief Henderson,

and Officer Greg Charles.

In his Response of Plaintiff to Defendants' Motion for Summary Judgment,

Plaintiff claimed that "[Defendant Littlejohn's] Complaint in this case is so lacking in any averment of probable cause that a crime had been committed that no reasonable officer could have believed that the Affidavit established probable cause." Response of Plaintiff to Defendants' Motion for Summary Judgment, pp. 8-9.

Then, Plaintiff asserted again that Defendant Charles "aided the entry into Plaintiff's mobile home, as well as entered the same, without a search warrant." Response of Plaintiff to Defendants' Motion for Summary Judgment, p. 9. Plaintiff's allegation that Officer Charles trespassed onto Plaintiff's property is based entirely on hearsay evidence and that evidence due to be stricken. <u>See</u> Defendants' Objection to Plaintiff's Evidentiary Submission and Motion to Strike. **Even if the Defendants actually effectuated a search**, *which they did not*, Defendants are entitled to qualified immunity based on their reasonable belief and arguable probable cause.

### A. A FACTUALLY SIMILAR CASE SETTING FORTH "REASONABLE BELIEF:" <u>MOORE V. ANDRENO,</u> ---- F.3d ----, 2007 WL 3052216 (2d Cir. 2007)

Plaintiff then stated that "[i]n the absence of a factually similar case, an official can have fair warning of violation of constitutional rights." Response of Plaintiff to Defendants' Motion for Summary Judgment, pp. 9-10. Plaintiff then

goes on to cite a variety of cases in support of his theory.

There is however, a factually similar case recently decided in the Second Circuit in New York which supports the defense and <u>afforded the police officer defendants qualified immunity for actions taken in the search of a restricted area</u>. In <u>Moore v. Andreno</u>, the Plaintiff and Ruth M. Sines were "on-again, off-again lovers." ---- F.3d ----, 2007 WL 3052216, *1 (2d Cir. 2007). They lived together for a year at a time here and there; Sines has a key to Moore's home, had furniture there, and paid some of the bills. <u>Id.</u> Sines, however, was not allowed to go into Moore's study, and it was always locked. <u>Id.</u> After an argument, Sines decided to move out and began to pack but noticed that some of her belongings were missing. <u>Id.</u> Believing her missing things to be in Moore's study, she cut the locks with a bolt cutter. <u>Id.</u> Sometime thereafter, Sines got a call from an unidentified caller, causing her to fear for her safety and call the police, who (Deputies Andreno and Palmer) were dispatched to the scene. <u>Id.</u> Upon their arrival, Sines asked the Deputies to help her find her things in Moore's study, but she clarified that "she 'wasn't allowed in th[e] [study] unless Moore was there' and that she had cut the locks off the door. She may also have informed them that the Deputies were likely to find marijuana in the study." <u>Id.</u> Sines searched through the study and found "drugs and drug paraphernalia" in a desk drawer and in the closet while the

13

Deputies were there.  Id.  The Deputies took the drugs, and later Moore was

indicted on drug possession charges.  Id. at *1-2.  Moore filed suit against the

Deputies, asserting claims under 42 U.S.C. §§ 1981, 1983, and 1985 and state law.

 Id. at *2.  His allegations sounded in claims of Fourth Amendment violations for

entry of his study and seizure of his drugs.  Id. (emphasis added).

The Circuit Court found that Sines did not have authority to access Moore's

study, as she had no control over the study, common authority over the area, and

did not share ownership of the house.  Id. at *6. (It should be noted, however, that

the Circuit Court, in other cases, "found the access requirement to be satisfied

when the party who consented to the search had a key to the searched area, . . . or

was the owner . . . and could get into [it] whenever he wanted despite not having

the key."  Id. (internal citation and quotations omitted)).  Neither did Sines have a

substantial interest in or permission to go into the study.  Id. at *7.   As such, Sines

lacked consent to the search, and the Deputies, therefore, cannot argue that the

search was reasonable.  Id.

The Deputies, however, were entitled to qualified immunity because the

"**Deputies could reasonably have believed that Sines had access and a**

**substantial interest and therefore had authority to consent to the search**."  Id.

at *11 (emphasis added).  At the time the search was conducted the law was not

14

clear as to whether Sines had lawful access to the study by way of cutting off the locks.  Id.  "Even though access was improperly obtained, it nevertheless constituted access . . . . [B]ecause we never decided whether physical force is permissible . . . a reasonable officer could not be sure that Sines did not have requisite access to the study."  Id.  Further, "an officer could have reasonably believed that Sines's suspicion that Moore had hidden her personal effects in his study was sufficient to constitute a substantial interest that could validate her consent."  Id.  "**And [i]f the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense**."  Id. (emphasis added) (internal citation and quotations omitted).

Defendant Officer Charles's traveling to Plaintiff's mobile home and standing outside of the same while Defendant Littlejohn collected her belongings is in no way a violation of the Plaintiff's rights.  Nevertheless, had Officer Charles entered the mobile home with Defendant Littlejohn's permission, he is entitled to immunity for his actions.  According to Defendants' Evidentiary Submission, Exhibit 2, Defendant Littlejohn had her own key and thus arguable "access" to the residence.  Her desire to collect her belongings contained therein is also arguably a "substantial interest" in the residence and the things located there.  As such, Defendant Charles had a reasonable belief that Defendant Littlejohn could

authorize Defendant Charles to enter the residence; if the officer's mistake as to what the law requires is reasonable,  the officer is entitled to the immunity defense.

### B.    ARGUABLE PROBABLE CAUSE

Finally, Plaintiff argued in his Response of Plaintiff to Defendants' Motion for Summary Judgment that Defendants acted under color of law and without probable cause.  Defendants do not dispute that they were acting under color of law.  Defendants dispute, however, that "probable cause" is required.  Rather, the threshold test, as further described below is "arguable probable cause," which clearly existed.

### 1.    MAYOR DRIVER, CHIEF HENDERSON, AND OFFICER GREG CHARGES ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEY ACTED WITH, AT MINIMUM, ARGUABLE PROBABLE CAUSE

To the extent the Plaintiff seeks damages from Mayor Driver, Chief Henderson, and/or Officer Greg Charles in their individual capacities on federal claims, they are entitled to qualified immunity.  Qualified immunity is 'an **immunity from suit rather than a mere defense** to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' Scott v. Harris, 127 S.Ct. 1769, 1774 n.2 (April 30, 2007) (emphasis added), citing Mitchell v. Forsyth, 472 U.S. 511 (1985).  The test for whether a governmental

defendant is entitled to qualified immunity involves a three-step analysis.

The first inquiry is to identify the specific constitutional right allegedly infringed. Section 1983 "is not itself a source of substantive rights." Albright v. Oliver, 510 U.S. 266 (1994) (citation omitted). To "identify" the right at issue, means to "identify the exact contours of the underlying right said to have been violated." County of Sacremento v. Lewis, 523 U.S. 833, 842-843 n.5 (1998), citing Graham v. Connor, 490 U.S. 386, 394 (1989). See also Anderson v. Creighton, 483 U.S. 635 (1987). The Plaintiff has completely failed to identify with particularity a specific "contour" of a constitutional right that was allegedly violated. See Complaint.

The second inquiry is to determine whether the claims of the Plaintiff, if proved, actually establish a *violation* of the identified and specific constitutional right. See Hope v. Pelzer, 536 U.S. 730 (Jun. 27, 2002). As argued herein, the Plaintiff cannot prevail upon any of his claims. Furthermore, to the extent that probable cause is relied upon as a bar to the Plaintiff's Section 1983 claims:

> To receive qualified immunity protection, "an officer need not have actual probable cause but only '*arguable probable cause*.'" Montoute v. Carr, 114 F.3d 181, 184 (11th Cir.1997). Because only arguable probable cause is needed, "the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." Id. "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to

immunity."  Hunter v. Bryant, 502 U.S. 224, 227 (1991).

Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003).  See also Marx v. Gumbinner,

905 F.2d 1503, 1505-06 (11th Cir. 1990) ("The existence of probable cause,

however, is an absolute bar to a section 1983 action for false arrest.").

On or about January 10, 2005, Defendant Littlejohn filed a Complaint with

the City of Clanton Police Department resulting in a Warrant for the arrest of the

Plaintiff for the unauthorized use of a vehicle owned by Defendant Littlejohn.  See

Defendants' Evid. Sub. Exhibit 1.  Defendant Littlejohn held the title to said

vehicle and provided documentation proving her sole ownership of the vehicle to

the Clanton Police Department.  Id.  Defendant Littlejohn complained to the

Clanton Police that the Plaintiff possessed the vehicle unlawfully and without her

authorization and prosecuted the charge.  Id. (emphasis added).  The Plaintiff

alleges that Officer Greg Charles unlawfully searched his property and unlawfully

arrested him pursuant to said warrant, as it pertains to the vehicle charge.  See

Notice of Claim, p. 1; see also Complaint.  Even if the Plaintiff's allegations are

true, which they are not, Officer Greg Charles certainly had probable cause, at the

very least *arguable* probable cause, to perform the alleged actions pursuant to a

warrant issued for such reasons as stated herein, again, as the warrant pertains to

the vehicle charge.

18

The Plaintiff has not offered any evidence to support his allegation that Mayor Driver and/or Chief Henderson are liable for the alleged actions by Officer Greg Charles outside of hearsay Affidavits that are due to be stricken. See Complaint; see also Defendants' Objection to Plaintiff's Evidentiary Submission and Motion to Strike.  Similarly, the Plaintiff has neither identified any failure in the training or supervision of Officer Greg Charles, nor has he identified any reason that the City should not have hired Officer Greg Charles outside of those same hearsay Affidavits.  Further, even if Officer Greg Charles performed the actions as alleged by the Plaintiff, which he did not, they would have been performed pursuant to a valid warrant.

If the second inquiry is resolved in the Plaintiff's favor, then the third inquiry requires the Court to determine whether the constitutional right, asserted by the Plaintiff to have been violated by the individual Defendant, was "clearly established" in a particularized sense, and in the law, at the time the Defendant acted.  See Godby v. Montgomery Co. Bd. Of Educ., 996 F.Supp. 1390, 1400 (M.D. Ala. 1998) (citing Jordan v. Doe, 38 F.3d 1559 (11th Cir. 1994)).  This is determined by reference to decisions of the Supreme Court of the United States and the Court of Appeals for the Eleventh Circuit.  See D'Aguanno v. Gallagher, 50 F.3d 877, 881 n.6 (11th Cir. 1995).  The relevant inquiry must demonstrate that

the individual defendant had "fair warning" that his conduct was unconstitutional.

Hope v. Pelzer, 536 U.S. at 741.

> In Anderson, we explained that what "clearly established" means in this context depends largely "upon the level of generality at which the relevant 'legal rule' is to be identified." 483 U.S. at 639. "[C]learly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id., at 640 (citations omitted); see also United States v. Lanier, 520 U.S. 259, 270 (1997).

Wilson v. Layne, 526 U.S. 603, 614-615 (1999). A plaintiff bears the burden of demonstrating that the individual defendant violated clearly established law. See McMillian v. Johnson, 88 F.3d 1554, 1562 (11th Cir. 1996), modified by 101 F.3d 1363 (11th Cir. 1996).

As previously stated, **even if the Plaintiff's allegations are true**, which they are not, Officer Greg Charles would not have had any "fair warning" that a search and subsequent arrest made pursuant to a warrant based on the complaints made by the proved owner of the vehicle would be in violation of the Plaintiff's constitutional rights. Neither would Officer Charles have had any "fair warning" that traveling to the mobile home in question at the request of Ms. Littlejohn would have been in violation of the Plaintiff's constitutional rights. The Plaintiff has

failed to meet his burden and only presents evidence by way of Affidavits attesting to hearsay, which are due to be stricken. For these reasons, the claims against Mayor Driver, Chief Henderson, and Officer Greg Charles are due to be dismissed with prejudice.

## **CONCLUSION**

Based on the foregoing, the Defendants are entitled to summary judgment and respectfully request this Honorable Court enter an Order in their favor as a matter of law.

/s/ James W. Porter II
James W. Porter II, one of the
Attorneys for Defendants, City of Clanton,
Mayor Billy Joe Driver, James Henderson,
and Greg Charles
State Bar ID ASB 3314 T79J
State Code POR001


/s/ Christy Lynn Sherbrook
Christy Lynn Sherbrook, one of the
Attorneys for Defendants, City of Clanton,
Mayor Billy Joe Driver, James Henderson,
and Greg Charles
State Bar ID ASB 2409 H65S
State Code  SHE 094

OF COUNSEL:
PORTER, PORTER & HASSINGER, P.C.
P.O. Box 128
Birmingham, Alabama  35201-0128
(205) 322-1744
Fax: (205) 322-1750

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been
***electronically filed*** with the Clerk of the Court using the CM/ECF system which
will send notification of such filing upon the following, this, the __**7**th__ day of
__**November**__, **2007**.  If Notice of Electronic Filing indicates that Notice should be
delivered by other means to any of the following, I certify that a copy will be sent
via U.S. Mail, properly addressed, postage prepaid.


Donald G. Madison, Esq.
418 Scott Street
Montgomery, AL 36104


                              /s/ James W. Porter II
                              OF COUNSEL